## SAMUEL and CALEB TREVOR'S Administrators *against* JOSEPH ELLENBERGER'S Executors.

### IN ERROR.

J. T. died in 1816, indebted to C. T. and J. E., secured by speciality, each obtained a judgment against the estate of J. T., in 1820: the judgment of C. T. was revived by *scire facias*, executions issued thereon, and in 1828 the real estate of J. T. was sold by the sheriff. The judgment of J. E. was revived by *scire facias*, issued in 1826. *Held*: That each of these judgments was entitled to a *pro rata* share of the proceeds of sale, which was insufficient to pay both.

The debts of a deceased person remain a lien upon his real estate for seven years, and if a suit for the recovery thereof is commenced immediately before the seven years expire, the lien is thereby continued for five years longer.

WRIT of error to the Common Pleas of *Fayette* county.

This was an amicable action, in which the administrators of *Samuel* and *Caleb Trevor* were defendants, and the executors of *Joseph Ellenberger*, were plaintiffs. The following statement of facts was agreed upon by the parties, and considered in the nature of a special verdict; upon which the Court below *(Baird* president,) rendered a judgment for the plaintiffs.

*John Tillard* died in 1816, indebted to the estate of *Samuel* and *Caleb Trevor*, by specialty, on which judgment was obtained on the 7th day of April, 1820, before a justice of the peace, for the sum of $129 82, a transcript of which judgment was filed with the prothonotary of the Court of Common Pleas of Fayette county, and entered on the docket on the 8th day of April, 1820. A *scire facias* issued on the said judgment thus entered, from the said court, on the 31st day of July, 1822, and the judgment was revived on the 22d day of August, 1822, on which a *scire facias* issued, to October term 1822, and an *alias scire facias* to January term, 1823. The real estate of *John Tillard*, dec'd, was levied on and condemned, and an *alias venditioni exponas* to June term, 1828, was issued, by virtue of which the real estate was sold, and the money brought into court. *John Tillard* also died indebted by specialty to *Christian* and *Christina Reist*, executors of *Joseph Ellenberger*, who, on the 11th day of April, 1820, ob-

tained five several judgments, before a justice of the peace, on five several notes under seal ; one thereof for the sum of $32 50, one other for $59 06¼, one other for $56 06¼, one other for $53 06¼, one other for $24 03, and transcripts thereof were filed in like manner as aforesaid on the 21st April, 1820.   On these several judgments, *scire facias* to revive the same were issued, on the 17th day of March, 1826, and the judgments revived at June term, 1818.   If the Court should be of opinion that the judgments of the plaintiffs or the debts founded on the specialities aforesaid, were subsisting liens on the real estate sold as aforesaid, and entitled to be paid *pro rata* with the judgment of the defendant, then judgment to be given for the plaintiffs.   But should it be of the opinion that the judgment for the defendant is entitled to a preference, and that the moneys made by the sale aforesaid ought to be appropriated to his claim, then judgment shall be entered for the defendant.

The estate of the said *John Tillard,* dec'd. is insufficient to pay the debts against it.

*Dawson* for plaintiff in error:

Contended that a judgment obtained against the estate of a deceased person must be revived within five years in order to preserve its lien.   *Fryhoffer* v. *Busby,* 17 *Serg. & Rawle,* 121. *Purd. Dig.* 533.

*Kennedy* for defendant in error.

The grade of the debts against the estate of a deceased person are fixed at the time of his death, and cannot be changed by the subsequent acts of the creditor.   These contending claims were of equal grade, and so they must remain.

The opinion of the Court was delivered by

ROGERS, J.—At the time of the death of *John Tillard,* the debts against his estate were of equal grade, and unless something has occurred since, the plaintiffs and defendant are still entitled, in the order of payment, to a *pro rata* division of the assets.   Before the act of 1797, the debts of a deceased person remained a lien, for an indefinite length of time.   For remedy of this inconvenience, the legislature enacted, that no such debts, except they be secured by mortgage, judgment, or recognizance, or other record, shall remain a lien on lands and tenements longer than seven years, unless an action for the recovery thereof, be *commenced* and *duly prosecuted,* &c., within the period of seven years. The plaintiffs and defendants duly prosecuted their claims to judgment, within the time prescribed by the act.   In that respect,

(Samuel and Caleb Trevor's administrators *v.* Joseph Ellenberger's executors.)

therefore, the condition on which the lien was to remain longer than seven years, was fully complied with. But it is said, that the executors of *Ellenberger,* having neglected to sue out a *scire facias* within five years after judgment, have lost their lien. We are of a different opinion. There is nothing in the act of the 4th April, 1798, which warrants the idea, that the legislature intended to interfere with the act of. the preceding year. It relates to judgments, rendered *inter vivos,* not to judgments against deceased persons, which *continue* the lien *created* by the death of the intestate; and are governed by the directions of the act of the 4th April, 1797. The law to which we are referred in the preamble of the act of 1798, is, the statute of frauds, of the 21st March, 1772. 4 *Dall.* 320, *Welsh* v. *Murray.* The mischief which it was intended to remedy, was, that after great length of time, purchasers might find it difficult to discover what judgments were outstanding, so as to affect the land they wished to purchase. The lien extending to all the lands of the debtor, no person could know, what part he might safely purchase. Under the act of 1797, the judgment creates no new lien. The law creates the lien on the lands of the decedent according to the order of payment, directed by the act of 1794. If *Ellenberger's* executors would have commenced no suit at all, the lien would have continued seven years; and if suit had been brought immediately before the expiration of the seven years, it would have continued until five years after the judgment. It cannot be a sound construction of the act, which would lead to the result, that the greater the diligence of the party in prosecuting his claim to judgment, the shorter the time the lien continues.

Judgment for the plaintiffs.